STATE OF NEBRASKA, APPELLEE, V. DEREK W. DIXON, APPELLANT.

467 N.W.2d 397

Filed March 22, 1991.    No. 89-1334.

Daniel W. Ryberg for appellant.

Robert M. Spire, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

Derek W. Dixon appeals from the Douglas County District Court's denial of postconviction relief under Neb. Rev. Stat. §§ 29-3001 et seq. (Reissue 1989).

The State charged Dixon with first degree murder, a violation of Neb. Rev. Stat. § 28-303 (Reissue 1989), and alleged that Dixon, "during the perpetration of, or attempt to perpetrate a burglary," killed the victim identified in the information filed against Dixon. A jury found Dixon guilty as charged. The district court later sentenced Dixon to life imprisonment. On direct appeal, this court affirmed Dixon's conviction. See *State v. Dixon*, 222 Neb. 787, 387 N.W.2d 682 (1986). The facts underlying Dixon's conviction are detailed in our opinion in

*State v. Dixon, supra*, and need not be entirely repeated here.

Dixon filed a motion to vacate or set aside his conviction pursuant to §§ 29-3001 et seq., and claimed that he had been denied effective assistance of defense counsel at trial and in his direct appeal. The Douglas County public defender's office represented Dixon at trial and in his direct appeal. At the postconviction hearing and in the present appeal, Dixon is represented by counsel who is not a member of the Douglas County public defender's office.

Dixon assigns numerous errors regarding the district court's finding that Dixon was not denied the constitutional right to effective assistance of counsel and overruling of Dixon's motion to compel his personal attendance at the postconviction hearings.

## STANDARD OF REVIEW

" 'In an evidentiary hearing, as a bench trial provided by §§ 29-3001 et seq. for postconviction relief, the trial judge, as the "trier of fact," resolves conflicts in evidence and questions of fact, including witness credibility and weight to be given a witness' testimony.' " *State v. Clear*, 236 Neb. 648, 650, 463 N.W.2d 581, 583 (1990) (quoting from *State v. Williams*, 224 Neb. 114, 396 N.W.2d 114 (1986)). " 'In an appeal involving a proceeding for postconviction relief, the trial court's findings will be upheld unless such findings are clearly erroneous.' " *State v. Clear, supra* at 650, 463 N.W.2d at 583 (quoting from *State v. Williams, supra*). Accord *State v. Dillon*, 224 Neb. 503, 398 N.W.2d 718 (1987).

## ASSISTANCE OF DEFENSE COUNSEL AT TRIAL

Dixon claims the district court erred in finding that defense counsel competently represented Dixon at trial, although counsel did not (1) move to suppress certain physical evidence, raise *Miranda* issues, inform Dixon concerning the State's offer for a plea bargain, adequately prepare and examine the cause of the victim's death, and investigate the possibility of another perpetrator in the victim's death; (2) object to jury instructions involving causation and intent; and (3) adequately raise a question concerning constitutionality of the felony murder statute.

"In a proceeding under the Nebraska Postconviction Act, the movant, in custody under sentence, must allege facts which, if proved, constitute a denial or violation of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the movant to be void or voidable." *State v. Start*, 229 Neb. 575, 577-78, 427 N.W.2d 800, 802 (1988); § 29-3001.

"[T]o sustain a claim of ineffective assistance of counsel as a violation of the sixth amendment to the U.S. Constitution and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, a demonstration of reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different."

*State v. Clear, supra* at 655, 463 N.W.2d at 585 (quoting from *State v. Hawthorne*, 230 Neb. 343, 431 N.W.2d 630 (1988)). See, also, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

In *Hawthorne*, we noted the U.S. Supreme Court's observation in *Strickland*:

"Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." 466 U.S.

at 697.

230 Neb. at 347, 431 N.W.2d at 633. Accord, *State v. Bostwick*, 233 Neb. 57, 443 N.W.2d 885 (1989); *State v. Williams, supra*.

To determine whether counsel's performance is deficient in representation of a criminal defendant, the standard is whether an attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the defense of a criminal case. See *State v. Britt, ante* p. 163, 465 N.W.2d 466 (1991).

*Suppression of Physical Evidence.*

Dixon questions the absence of a motion to suppress a pair of Dixon's tennis shoes as evidence that linked Dixon to the crime. Before his arrest, Dixon was living at a Job Corps site in Excelsior Springs, Missouri. A Job Corps security officer, William McCant, transported Dixon from the Job Corps school to the Excelsior Springs Police Department, where Dixon was placed under arrest in response to a Nebraska warrant, but he was later transferred for booking at police headquarters in Clay County, Missouri. Officers in Clay County took custody of Dixon's clothing, marked and bagged it, placed it in an evidence locker, and issued a property receipt to Dixon. Later, from McCant, officers received Dixon's personal effects, including the tennis shoes, which had been kept at Dixon's Job Corps residence, property which was also marked, sealed, and placed in an evidence room at the Clay County police headquarters. These items were not examined by police until two Omaha police detectives brought Dixon to Omaha and obtained a search warrant.

Before trial, Dixon's trial attorney talked with McCant and Dixon regarding the circumstances under which Dixon's property came into possession of police. These conversations confirmed that before McCant relinquished Dixon's property to police, he had asked Dixon whether he wanted his belongings to accompany him or remain at the Job Corps campus. Dixon replied that he wanted to bring his property with him. Therefore, counsel concluded that there was no constitutional issue concerning police possession of Dixon's property. Dixon now claims that counsel failed to file a suppression motion

concerning Dixon's personal effects and to raise the issue of an unconstitutional seizure of Dixon's property, that is, possession of the property by McCant and delivery to the Clay County police.

The fourth amendment provides that the "right of the people to be secure in their . . . effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. Accord Neb. Const. art. I, § 7. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984). The constitutional protection against an unreasonable search and seizure proscribes only governmental action and is inapplicable to a " 'search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official.' " *United States v. Jacobsen, supra* at 466 U.S. at 113 (quoting from *Walter v. United States*, 447 U.S. 649, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980)). See, also, *Burdeau v. McDowell*, 256 U.S. 465, 41 S. Ct. 574, 65 L. Ed. 1048 (1921) (fourth amendment protection against unlawful searches and seizures applies to governmental action and is intended to restrain sovereign authority). It is doubtful that McCant, who brought Dixon's personal effects to police, was a law enforcement officer. Nevertheless, a suppression motion based on McCant's possession of Dixon's property would have been unsuccessful under the circumstances because Dixon consented, within the meaning of search and seizure law, to McCant's possession and transportation of the property. "[T]he right to be free from unreasonable search and seizure . . . can be waived by the consent of the citizen." *State v. Juhl*, 234 Neb. 33, 41, 449 N.W.2d 202, 208 (1989).

As a result of the conversations with Dixon and McCant, defense counsel was unaware of any circumstances which would have negated Dixon's consent extended to McCant regarding possession of Dixon's property. To the contrary, Dixon explicitly requested that his belongings accompany him. Based on applicable law, counsel reasonably decided to forgo a suppression motion regarding McCant's possession of Dixon's

personal effects and delivery of that property to police. Counsel acted within the range of reasonable professional assistance, so that his actions in this regard cannot be considered ineffective and thereby be a basis to set aside Dixon's conviction. Although Dixon testified that "[i]t was never made clear" how the police received his property, the trial judge resolved any factual question against Dixon. We cannot conclude that the trial court was clearly erroneous in its decision.

Dixon also argues that his counsel at trial was derelict by not filing a similar suppression motion regarding the Missouri police officers' "seizure" of Dixon's property as the result of an inventory at police headquarters. "At the station house, it is entirely proper for police to remove and list or inventory property found on the person or in the possession of an arrested person who is to be jailed. A range of governmental interests supports an inventory process," *Illinois v. Lafayette*, 462 U.S. 640, 646, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983), which include (1) protecting property of an arrestee in custody, (2) protecting police from groundless claims that an arrestee's property has not been properly safeguarded, (3) protecting or maintaining security of a detention facility by preventing introduction of weapons or contraband into the facility, and (4) ascertaining or verifying an arrestee's identity. See, W. LaFave & J. Israel, Criminal Procedure § 3.5 (West 1985); *Illinois v. Lafayette, supra*.

Dixon has not shown how the absence of a suppression motion based on the officers' possession of his inventoried personal property fell below the objective standard of reasonableness as required to sustain an ineffective assistance of counsel claim. Therefore, Dixon's assignment of error regarding suppression of physical evidence is without merit.

*Exploration of "Miranda" Questions.*

Dixon broadly asserts that defense counsel's performance was deficient at the suppression hearing because counsel failed to "[a]dequately raise and examine [Dixon's] Miranda rights," including Dixon's invocation of the right to counsel, the "pretextual" reasons given by officers for interrogation of Dixon, police enticement through a promise that Dixon would

have "conjugal" visits with his girl friend if he went to jail, and the officers' lying to Dixon during interrogation. Dixon also complains about his counsel's failure to call a certain police officer as a witness at the suppression hearing. All these arguments focus on Dixon's interrogation by two Omaha police detectives, Paul Wade and Richard Circo, who traveled to Missouri and brought Dixon to Nebraska. See *State v. Dixon*, 222 Neb. 787, 387 N.W.2d 682 (1986).

Dixon first contends that "[a]t no time during the cross-examination of Officer Circo at the suppression hearing nor at the direct examination of [Dixon] did trial counsel elicit any questioning concerning whether [Dixon] invoked his right to an attorney at a point during the interrogation." Brief for appellant at 16. Contrary to Dixon's assertion, at the suppression hearing counsel specifically asked Officer Circo on cross-examination whether and when Dixon had requested a lawyer. Additionally, in the suppression hearing the prosecutor raised the issue during direct examination of Circo and in cross-examination of Dixon. Therefore, the issue of Dixon's invocation of the right to an attorney was definitely and adequately before the court, whether presented by defense counsel or the prosecutor. The district court subsequently resolved the issue as a matter of fact. Dixon fails to explain how defense counsel's presentation of this issue was insufficient and how the ultimate outcome of the case would have been different if defense counsel had pursued a more expansive line of questioning on the subject.

Dixon next claims that during the suppression hearing, his lawyer failed to raise a question about "pretextual" *Miranda* admonitions or warnings, that is, the *Miranda* admonitions or warnings to Dixon before interrogation related only to a burglary charge, not a homicide charge, and were an "attempt to misrepresent the true purpose and the intent of the officers," namely, questioning Dixon about a murder. Brief for appellant at 20. At the suppression hearing, defense counsel repeatedly raised the "pretext" issue throughout cross-examination of Officer Circo and during direct examination of Dixon. Moreover, during interrogation by the Nebraska officers in Missouri, "Dixon asked to see Detective Wade's 'calling card,'

which designated Wade as an officer of the 'homicide unit' of the Omaha Police Department." *State v. Dixon, supra* at 791, 387 N.W.2d at 685. Dixon's claim about the "pretext" issue is frivolous.

On appeal, Dixon makes additional claims about defense counsel's failure to pursue police promises regarding Dixon's visitations with his girl friend during any confinement of Dixon and police "lies" in an attempt to encourage Dixon's confession. Because these issues were not raised in Dixon's postconviction motion or during the hearing on Dixon's motion and are unmentioned in the district court's decision, we will not consider these matters on appeal in the absence of plain error.

> In the absence of plain error, when an issue is raised for the first time in an appellate court, the issue will be disregarded inasmuch as a trial court cannot commit error regarding an issue never presented and submitted for disposition in the trial court. See *State v. Fletcher*, 221 Neb. 562, 378 N.W.2d 859 (1985) (failure to raise, at the trial level, a question concerning an allegedly unreasonable search preserved no question for appellate review regarding the search). . . . Generally, a constitutional question not properly raised in the trial court will not be considered on appeal.

*State v. Oldfield*, 236 Neb. 433, 438-39, 461 N.W.2d 554, 559 (1990).

In his final argument regarding possible *Miranda* violations, Dixon alleges ineffective assistance of counsel in failure to call Officer Wade as a witness at the suppression hearing. At the hearing, Officer Circo testified that the officers did not tell Dixon a "parable" in an attempt to elicit a confession, whereas at trial, Officer Wade stated that a parable was related to Dixon when the officers were transporting him from Missouri to Omaha. Dixon argues that "[b]y not calling Wade at the suppression hearing, [Dixon] was denied corroboration from a police officer," since Dixon also claimed that a parable was, in fact, given. Brief for appellant at 18. In the suppression hearing, Dixon related the "parable":

> "So then he [one of the detectives] had asked me, what do I think would be best, and then he gave me the parable

of two children caught stealing in a store, or something of that nature. And he said — he asked me, if I had kids, which one would I punish if they had both got caught stealing and this one here comes home and tells his mother that he didn't get — that he wasn't stealing, and this one said he was, which one would she get on the most, you know."

*State v. Dixon*, 222 Neb. 787, 792, 387 N.W.2d 682, 685 (1986).

Before the suppression hearing, defense counsel talked with Officer Wade regarding the officer's prospective testimony and, at that time, determined that Wade's testimony would duplicate and strengthen Circo's testimony. As defense counsel explained: "I thought Dixon's testimony was exceptionally credible, and I felt that by putting Wade on the stand with what my information was at that time . . . that Wade is an inherently more believable officer and that if he backed up what Circo was saying, I lose."

As a matter of strategy for trial of a criminal case, a defense counsel's decision to call or not to call a witness is not, by itself, ineffectiveness of counsel. *State v. Britt, ante* p. 163, 465 N.W.2d 466 (1991). See, also, *State v. Evans*, 235 Neb. 575, 456 N.W.2d 739 (1990); *State v. El-Tabech*, 234 Neb. 831, 453 N.W.2d 91 (1990). Dixon's argument is without merit.

*Plea Bargain.*

Defense counsel maintained that he had brief conferences with Dixon concerning the possibility of a plea bargain, but Dixon "was not very interested" in any plea arrangement. Dixon claimed that his lawyer never discussed a plea bargain with him. The trial judge, as the trier of fact in this postconviction proceeding, determined witness credibility and weight to be accorded testimony from Dixon and his lawyer and resolved factual issues, including conflicts in the evidence, consistent with the version recounted by Dixon's defense counsel. We are unable to conclude that the district court's findings are clearly erroneous.

*Cause of Death.*

Dixon next contends that his defense counsel was ineffective by failing to adequately explore the cause of the victim's death.

As detailed in *State v. Dixon, supra*, Dr. Blaine Roffman, a pathologist and witness for the State, testified about the autopsy of the homicide victim. At the conclusion of the State's direct examination, Dr. Roffman expressed the opinion that the cause of the victim's death was "cardiac arrhythmia, which is an abnormal rhythm, due to the underlying coronary artery disease which I described in association with being exposed to severe cold weather." During cross-examination, Dr. Roffman identified "the shock value and the emotional trauma inflicted upon this lady at the time of the break-in" as the cause of the arrhythmia which eventually led to the victim's death. Dixon now argues that defense counsel introduced the factor of "shock value" into the trial by choosing to cross-examine Dr. Roffman. "Had trial counsel not asked any questions of the pathologist [Dr. Roffman], there would have been inadequate medical causal connection between the death of the victim, and any acts of [Dixon] or other person[s]." Brief for appellant at 29.

In cross-examining Dr. Roffman, defense counsel engaged in a rigorous inquiry about other possible causes for cardiac arrhythmia, such as age and overexertion, and the doctor's lack of personal knowledge concerning the precise circumstances surrounding the victim's death. The cross-examination culminated in the doctor's acknowledgement that, in the absence of information about actual events, he could not state what caused the particular cardiac arrhythmia which resulted in the victim's death. As defense counsel explained at the postconviction hearing:

> My concern was trying to raise some issue of the cause of death, other than exposure to cold, because it was apparent to me that exposure to cold was going to be linked to the fact that the door was kicked in in the burglary.
>
> And, you know, if that's the cause of death, the burglar, if it's Dixon, is in big trouble.

Dixon has demonstrated neither that defense counsel's strategy in the cross-examination of Dr. Roffman reflected unreasonable professional judgment, nor that counsel failed to perform at least as well as an attorney with ordinary training

and skill in defending criminal cases. From the fact that Dixon was eventually convicted, we are unable to draw the conclusion that defense counsel's strategy at trial constitutes ineffective assistance of counsel. See *State v. Williams*, 234 Neb. 890, 453 N.W.2d 399 (1990).

Dixon complains about the absence of Dr. Roffman's pretrial deposition, the absence of a challenge to Dr. Roffman's qualifications as an expert witness, and defense counsel's offer to stipulate Dr. Roffman's qualifications as an expert, although no stipulation was actually achieved. In making these assertions, Dixon shows neither that defense counsel's performance fell outside the range of professionally sufficient assistance, nor that counsel's actions or inactions prejudiced Dixon's defense. Thus, Dixon has failed to demonstrate reasonable probability that, but for defense counsel's allegedly deficient performance, if there was any deficiency, Dixon's trial would have turned out any differently. Therefore, Dixon has not shown a deficiency in defense counsel's performance or that Dixon's conviction is constitutionally unsustainable.

*Possibility of Another Perpetrator.*

Dixon states that fingerprints of Michael Lytle, a known burglar, were discovered in the vicinity where the victim lived and that on the day the victim's body was found, officers arrested Melvin Harris, who was wearing tennis shoes similar to those which left prints at the crime scene. According to Dixon, defense counsel failed to explore these circumstances.

Once again, Dixon has not clarified a particular course of action which defense counsel should have taken within the bounds of reasonable professional competence, nor has Dixon specified how any alternate course of action would have changed the outcome of his trial. Neither has Dixon indicated the substance of the information which the supposed witnesses would have provided. Moreover, Dixon did not call the named individuals as witnesses for the postconviction hearing. In the absence of evidence indicating the substance of a witness' testimony if the witness had been called to testify as a defense witness, a defendant fails to establish prejudice from the absence of a witness. See, *State v. Otey*, 212 Neb. 103, 321

N.W.2d 453 (1982); *State v. Anderson*, 216 Neb. 521, 344 N.W.2d 473 (1984). Therefore, Dixon has not established ineffective assistance of counsel regarding any absent witness.

*Jury Instructions.*

Dixon next claims that defense counsel was ineffective when he failed to object to jury instruction No. 5, which involved causation, and instruction No. 11, which dealt with intent.

Because instruction No. 5 was not the subject of Dixon's postconviction motion, was not considered at the suppression hearing, and is not mentioned in the district court's decision, we decline to address Dixon's contention regarding instruction No. 5. See, *State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990); *State v. Fletcher*, 221 Neb. 562, 378 N.W.2d 859 (1985).

Dixon also asserts that defense counsel was ineffective by failing to object to part of instruction No. 11 given to the jury, namely: "The turpitude involved in the burglary takes the place of intent to kill or premeditated malice, and the purpose to kill is conclusively presumed from the criminal intention required for burglary." Dixon correctly points out that the "conclusive presumption" language in the instruction was expressly disapproved before Dixon's trial. See *State v. Bradley*, 210 Neb. 882, 317 N.W.2d 99 (1982). However, we find that any error as the result of the instruction was harmless beyond a reasonable doubt. "Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant." *State v. Watkins*, 227 Neb. 677, 686, 419 N.W.2d 660, 666 (1988).

The instruction in question could not have materially influenced the jury in its verdict because, according to the instructions given, "purpose to kill," which was "conclusively presumed" from the criminal intent required for burglary, is not an element of felony murder defined by § 28-303, the statute under which Dixon was convicted. In Nebraska, a specific intent to kill is not required for felony murder, but only the intent to do a felonious act which causes a victim's death. *State v. Bradley, supra*; *State v. Perkins*, 219 Neb. 491, 364

N.W.2d 20 (1985); *State v. Hubbard*, 211 Neb. 531, 319 N.W.2d 116 (1982); *State v. Montgomery*, 191 Neb. 470, 215 N.W.2d 881 (1974). Under the instructions given to the jury, the State was not relieved of its burden to prove, beyond a reasonable doubt, that Dixon committed the underlying or predicate felony with the requisite criminal intent. Hence, there is no reversible error in Dixon's felony murder conviction as a result of instructions to the jury.

*Constitutionality of the Felony Murder Statute.*

Dixon complains that defense counsel was ineffective (1) in failing to dispute the constitutionality of the felony murder statute and (2) in not adequately preparing or presenting the "cruel and unusual punishment aspect of the constitutionality." Brief for appellant at 39.

Dixon expressly admits that *State v. Bradley, supra*, a decision issued in 1982 and, therefore, in existence at the time of Dixon's trial in 1985, "rejected the constitutional argument of the felony murder rule. However, [Dixon's] counsel should raise every issue so that this Court can state or restate its opinion." Brief for appellant at 39. Contrary to Dixon's contention, defense counsel was dutybound to avoid asserting frivolous positions in litigation.

> [An advocate's] conduct is within the bounds of the law, and therefore permissible, if the position taken is supported by the law or is supportable by a good faith argument for an extension, modification, or reversal of the law. However, a lawyer is not justified in asserting a position in litigation that is frivolous.

Canon 7, EC 7-4, of the Code of Professional Responsibility. Because Dixon does not indicate how an argument by defense counsel would have been justified or how such an argument would have altered the outcome of his trial and conviction, Dixon has failed to show that defense counsel's conduct fell outside the realm of reasonable professional assistance or that counsel's conduct prejudiced Dixon's defense.

Dixon also argues that defense counsel did not adequately argue that the felony murder rule resulted in cruel and unusual punishment under the eighth amendment to the U.S.

Constitution and article I, § 9, of the Nebraska Constitution. Although Dixon's lawyer did not present the district court with any supporting case law on the subject, he did move for

> an order to declare the felony murder statute unconstitutional as applied to Derek Dixon in this case on the grounds that the penalty of life or death for this type of an offense is cruel and unusual punishment in violation of the Eighth Amendment of the Constitution of the United States and to that section of the Nebraska Constitution prohibiting cruel and unusual punishment.

Counsel then proceeded to state several reasons underlying the motion.

Dixon has again failed to demonstrate how defense counsel's presentation of the "cruel and unusual punishment" issue fell below that of a lawyer with ordinary training and skill in the defense of a criminal case, and how defense counsel's performance, if deficient, prejudiced Dixon's defense. Dixon's contention is without merit.

## ASSISTANCE OF APPELLATE COUNSEL

Dixon also raises complaints about the performance of his appellate counsel in the direct appeal, a lawyer who was also a member of the Douglas County public defender's office. Dixon challenges his appellate counsel's failure to raise in the direct appeal (1) defense counsel's failure to raise the issue of Dixon's invocation of his right to an attorney, (2) police promises regarding Dixon's visits with his girl friend while Dixon was in confinement, (3) the "pretextual" nature of the officers' reasons for interrogation of Dixon, (4) the unconstitutionality of the felony murder statute, and (5) defense counsel's failure to object to instructions on causation and intent. We have examined each of Dixon's arguments directed to performance of his appellate counsel, arguments which are substantially similar, if not identical, to many of Dixon's complaints about the performance of his lawyer at trial. We find that none of Dixon's challenges or complaints are meritorious. In any event, Dixon has failed to show how appellate counsel was deficient in performance regarding the foregoing issues and in what manner Dixon sustained detriment from appellate counsel's

performance, or how taking a different course of action would have, in reasonable probability, changed the result of Dixon's direct appeal. Since Dixon has failed to show prejudice as one of the requirements to sustain an ineffective assistance of counsel claim, we are not obligated to discuss the issues of the "pretextual" nature of the reasons for Dixon's interrogation and unconstitutionality of the felony murder statute. Nevertheless, if appellate counsel had raised the "pretextual" nature of the reasons for Dixon's interrogation, that is, Dixon believed that he was being questioned about a burglary, when the police were actually seeking information about a homicide, that question would have been resolved against Dixon. At the time of Dixon's trial and direct appeal, Nebraska law indicated that once an accused is arrested and given the *Miranda* admonitions or warnings, there is no requirement that those admonitions or warnings be renewed each time the accused, pursuant to the original arrest, is subsequently questioned about a crime or crimes which differ from the criminal conduct for which the accused has been arrested. See *State v. Comer*, 205 Neb. 549, 288 N.W.2d 487 (1980), which was later supported by *Colorado v. Spring*, 479 U.S. 564, 577, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987): "[W]e hold that a suspect's awareness of all the possible subjects of questioning in advance of interrogation is not relevant to determining whether the suspect voluntarily, knowingly, and intelligently waived his Fifth Amendment privilege."

Similarly, if appellate counsel had made the constitutional challenge that the felony murder statute allows cruel and unusual punishment, an issue raised by defense counsel at trial, that argument would have been rejected in Dixon's direct appeal. At the time of Dixon's direct appeal, this court, in *State v. Perkins*, 219 Neb. 491, 364 N.W.2d 20 (1985), had rejected a challenge to the felony murder statute on the claim that the statute allowed "disproportionately harsh sentences of death or life imprisonment to be imposed upon a defendant who did not kill or have the intent to kill." *State v. Perkins, supra* at 498, 364 N.W.2d at 26. Later, in *State v. Rust*, 223 Neb. 150, 161, 388 N.W.2d 483, 493 (1986), this court stated: "It cannot be said that our Legislature acted outside the bounds of the eighth

amendment to the U.S. Constitution when it determined that one who kills in the perpetration of a felony might thereby subject himself or herself to the death penalty." In retrospect, we are reasonably certain that if Dixon's counsel had raised the cruel and unusual punishment issue during Dixon's direct appeal, we would have then reached the same conclusion which we later expressed in *State v. Rust, supra.*

## MOTION TO COMPEL ATTENDANCE

In his final assignment of error, Dixon claims the district court erred in overruling Dixon's motion to compel his personal attendance at the postconviction hearing instead of accepting Dixon's testimony through his deposition. This alleged error is also meritless. Section 29-3001 specifically states that in a postconviction proceeding, a court "may entertain and determine such motion without requiring the production of the prisoner . . . . Testimony of the prisoner or other witnesses may be offered by deposition."

> In *State v. Woods,* 180 Neb. 282, 142 N.W.2d 339 (1966), we held that although a prisoner could not be prevented from testifying in support of his motion, he had no right to be personally present at an evidentiary hearing on the motion. See, also, *State v. Wells,* 197 Neb. 584, 249 N.W.2d 904 (1977), and *Davis v. State,* 51 Neb. 301, 70 N.W. 984 (1897), relating to the right to be present at the hearing on a motion for a new trial.

> We conclude it was not error for the trial court to require that the defendant's testimony be presented by deposition.

*State v. Otey,* 212 Neb. 103, 104-05, 321 N.W.2d 453, 454 (1982).

## CONCLUSION

In his allegations regarding ineffective assistance of defense counsel at trial and in the direct appeal, Dixon has failed to demonstrate that his lawyers failed to properly function as effective counsel in accordance with the right guaranteed by the sixth amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution. Dixon's right to counsel pursuant to the state and federal Constitutions was neither denied nor

infringed, which constitutional violations would require setting aside his conviction. Dixon's assignments of error are without merit. Consequently, the judgment of the district court is affirmed.

AFFIRMED.