STATE OF NEBRASKA, APPELLEE, V. RICHARD G. BACK, APPELLANT.
488 N.W.2d 26

Filed August 21, 1992.   No. S-91-158.

Vincent M. Powers for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, C.J.

Richard G. Back appeals his conviction, following a jury trial, of motor vehicle homicide, a violation of Neb. Rev. Stat. § 28-306(1) (Reissue 1989).

Back assigns as error the trial court's failure to grant the defendant's motion for dismissal at the close of the State's evidence "with respect to the charge of driving 'while under the influence,' " the court's overruling of defendant's motion for a new trial and "finding there was sufficient evidence to support the conviction that defendant was driving 'under the influence,' " the refusal of the trial court to submit to the jury the lesser-included offense of driving while intoxicated, the giving of instructions Nos. 4 and 8 because they contained the

"under the influence" theory, and the denial of Back's motion to seek discovery in forma pauperis.

" 'In determining whether evidence is sufficient to sustain a conviction in a jury trial, an appellate court does not resolve conflicts of evidence, pass on credibility of witnesses, evaluate explanations, or reweigh evidence presented to a jury, which are within a jury's province for disposition. . . .' . . .

" 'On a claim of insufficiency of evidence, an appellate court will not set aside a guilty verdict . . . where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.' "

(Citations omitted.) *State v. Schumacher*, 240 Neb. 184, 186, 480 N.W.2d 716, 718 (1992).

The accident in which Jennifer Krantz was killed occurred on the evening of September 8, 1989. At approximately 8:30 p.m. that day, three Malcolm High School students—Sean Powell, Rhonda Griess, and Jennifer Krantz—were attempting to start Griess' stalled Ford Mustang automobile. The Mustang was parked on the east shoulder of Spur 55, a state highway running generally from south to north toward Malcolm, Nebraska, and was facing north on what would be its right-hand side of the highway.

Powell, along with Griess and Krantz, had gotten a ride into Malcolm when the Mustang would not start, and they returned in Powell's pickup truck. Eventually, Powell parked his truck on the same side of the highway as the Mustang, facing in the opposite direction, the front end of the truck pointing to the front end of the Mustang. He had done this so that the headlights of his truck would shine into the opened hood of the Mustang in order that he could see while he attempted to dry the distributor cap of the Mustang or otherwise remedy the defect. Powell admitted that his pickup was, in part, on the paved portion of the highway; precisely where is not clear. The State's accident reconstruction expert testified that the pickup could have been as far into the east traffic lane as to have been positioned with its right-hand, or passenger side, wheels 2 feet 5

inches to the inside, or west, of the white line marking the outer edge of that northbound traffic lane. The expert also testified that the pickup might have been so far to the east that its right-hand wheels were directly on that white line. The pickup truck had its headlights on.

The Griess car was parked at a slight angle to the edge of the pavement and was located on the shoulder of the northbound lane of traffic. The hub of the left front wheel of the car was 19 inches east of the inside of the white line on the edge of the northbound traffic lane. The hub of the left rear wheel was 14 inches east of that same white line.

The accident happened between 9 and 9:30 p.m. Griess was in the driver's seat of her car, and Powell was working under the hood of Griess' car. Krantz was at the driver's side window of Griess' Mustang, talking to Griess. Krantz was leaning over, resting her arms on the car door as she spoke to Griess through the open window.

Back was driving his parents' Dodge Aspen station wagon from Lincoln, Nebraska, to Malcolm via Spur 55. Back testified that he was driving at approximately 45 miles per hour when the accident happened. He said that it was dark and had been raining off and on just before the collision. He came around a curve or turn, when he met another vehicle. The lights on both vehicles were dimmed, and after the other car went past, Back put his headlights on high, and he "noticed a flash in front of us and it was too late to stop and we had a collision with the truck."

Actually, just before hitting the truck, the passenger-side front bumper of Back's vehicle struck Krantz on the upper right thigh. The right side of Krantz' head was struck by the window support post next to the windshield on the passenger side of Back's station wagon. The outside of Krantz' left ankle knocked the driver's-side mirror off Griess' Mustang. This mirror stuck out approximately 6 or 7 inches from the driver's-side door.

Back admitted drinking six beers and a portion of a seventh, beginning about noon on the day of the accident. Back claimed he drank two of these beers and a portion of a third after approximately 8:30 p.m. Back claimed he had last eaten an

hour and a half or more before drinking these final beers.

Powell smelled alcohol on Back's breath at the accident scene. The sheriff's deputy, Jeffrey Brandl, who interviewed Back in the hospital at approximately 10 p.m. smelled "a very noticeable odor of alcohol on his breath," saw that he had "bloodshot, watery eyes," and observed that Back's "speech was somewhat incoherent at times." However, the deputy was unable to give his opinion as to the sobriety of Back in the face of foundation objection.

A blood sample taken from Back at 11:52 p.m. was tested and revealed an alcohol content of .106 grams per 100 milliliters of blood. The State's pathologist calculated that Back's blood alcohol content at the time of the accident was at least .140 grams per 100 milliliters of blood. The pathologist also stated that it was "impossible" for Back to achieve that blood alcohol content had he consumed only the two-odd beers he claimed to have consumed shortly before the accident.

Back's motion to dismiss, made at the close of the State's case, was denied. Back objected to jury instruction No. 4, which allowed the jury to find Back guilty of motor vehicle homicide, based either upon driving while intoxicated or upon careless driving, or to find him not guilty. The instruction outlined the elements of each theory of guilt and allowed the jury to find Back guilty of motor vehicle homicide based upon driving while intoxicated if it found either that he was operating a vehicle while under the influence of alcohol or that he was operating a vehicle with a blood alcohol content greater than ten-hundredths of 1 percent.

Back's objections to instruction No. 4 were that it did not instruct as to the lesser-included offense of driving while intoxicated and that it did not require unanimity of the jury "as to whether or not he was either under the influence or .10." However, Back's proposed instruction No. 1, tendered to the court and refused, differed only in that it instructed the jury as to the lesser-included offense of driving while intoxicated. Neither Back's proposed instruction nor the court's instruction No. 4 required the jury to be unanimous as to which theory of driving under the influence it applied. Back concedes this to be the rule in Nebraska.

Back also objected to the court's instruction No. 8 as being "unnecessary [and] cumulative." That instruction defined "under the influence of alcoholic liquor" as ingesting alcohol in an amount sufficient to impair to any appreciable degree the ability to operate a motor vehicle in a prudent and cautious manner.

Following a verdict of guilty and the apparent overruling of Back's motion for new trial, the court entered judgment and a sentence of imprisonment of 15 months to 2 years. The defendant appealed. We affirm.

After the State's rest and the court's overruling of Back's motion for an order of dismissal, Back presented evidence in his own behalf. "A defendant who moves for dismissal or a directed verdict[,] proceeds with trial[,] and introduces evidence, waives the appellate right to challenge correctness in the trial court's overruling the motion for dismissal or a directed verdict, but may challenge sufficiency of the evidence for the defendant's conviction." *State v. Gray*, 239 Neb. 1024, 1027, 479 N.W.2d 796, 798 (1992); *State v. Dawson*, 240 Neb. 89, 480 N.W.2d 700 (1992). By presenting evidence, Back waived any claim of error in the denial of his motion to dismiss.

The last assignment of error, regarding the claim that the trial court failed to grant Back's motion to conduct discovery in forma pauperis, is wholly without merit, because the record does not contain an order of the district court addressing Back's motion for such discovery. There is nothing in the record to indicate that the district court considered the issue at all.

"It is incumbent upon the party appealing to present a record which supports the errors assigned; absent such a record, as a general rule, the decision of the lower court is to be affirmed." *In re Interest of R.R.*, 239 Neb. 250, 253, 475 N.W.2d 518, 520 (1991). In order for the court to address this assigned error, it is necessary that the record indicate that the district court addressed and decided the issue. See *State v. Beins*, 235 Neb. 648, 654, 456 N.W.2d 759, 763 (1990) ("[i]ssues not properly presented *and passed upon* by the trial court may not be raised on appeal"). (Emphasis supplied.)

The remaining assignments of error focus on the "driving while under the influence" theory; i.e., Back's assignments of

error claim that the record fails to support that theory and that it should not have been submitted. Actually, he also alludes to the absence of a showing of proximate cause, and although that issue is not preserved specifically in any assignment of error, we address it in the overall discussion.

Back argues that there was no evidence to show that he was operating his vehicle while impaired by alcohol and, consequently, that driving while impaired could not be the proximate cause of the accident. This ignores the issue of whether the evidence showed his blood alcohol content to be above the statutory limit. The State in this case had to prove that Back violated Neb. Rev. Stat. § 39-669.07 (Reissue 1988) (operating a motor vehicle while under the influence of alcoholic liquor or with a concentration of ten-hundredths of 1 gram or more by weight of alcohol per 100 milliliters of blood or urine). See *State v. Batts*, 233 Neb. 776, 448 N.W.2d 136 (1989). Section 39-669.07 defines but one offense, which can be proved in one of several ways. *State v. Parker*, 221 Neb. 570, 379 N.W.2d 259 (1986). Actually, Back does not argue on this appeal that there was insufficient evidence to show that he was operating a motor vehicle with an illegal concentration of alcohol in his blood. Since the jury could have convicted him on that theory alone, there is no prejudice to him in submitting to the jury the issue of whether he was "under the influence" at the time of the accident.

However, the primary thrust of Back's claim of insufficiency of the evidence is that no witness offered his or her opinion that Back was intoxicated to the point of impairment at the time of the accident.

It is not necessary, in order for a court to sustain a drunk driving conviction on appeal, that some witness offer at trial his or her opinion as to the defendant's intoxication. *State v. Hilker*, 210 Neb. 810, 317 N.W.2d 82 (1982). A jury is "equally able . . . to conclude whether or not the defendant was under the influence of alcoholic liquor." *Id.* at 814, 317 N.W.2d at 85. In this case, the evidence was sufficient to allow the jury to reach its own conclusion regarding Back's intoxication.

Back himself admitted to drinking during the day of the accident, and claimed that he had his last drink just minutes

before the accident. Powell testified that he smelled alcohol on Back's breath immediately after the accident. While Powell stated on cross-examination that he did not consider Back drunk, he explained that "drunk" to him meant "falling down, staggering, really just passing out" and that he did not see Back in that state. Additionally, the sheriff's deputy who interviewed Back at the hospital at approximately 10 p.m. smelled "a very noticeable odor of alcohol on his breath" and saw that he had "bloodshot, watery eyes" and that "[h]is speech was somewhat incoherent at times."

There was also evidence that alcohol impaired Back's ability to drive. Chief among this evidence is the way in which the accident occurred. Back approached the scene where the victim and her two friends were attempting to start a stalled car on a stretch of highway that was level and straight for at least fifty-five one-hundredths of a mile before the accident. There was credible evidence that the headlights on Powell's pickup were on, and because of the truck's position on the road, at least one of the headlights would have been shining directly toward Back's car as he approached the accident scene. There was also some evidence, although contradicted by Back, that there was no traffic coming from the opposite direction toward Back's vehicle. The nature of the accident implies that an unimpaired driver would have been aware of the roadside emergency ahead and would have been able to keep to his left to avoid an accident.

The evidence of the collision of Back's vehicle and Krantz' body shows that this is not what Back did. Krantz was standing next to Griess' car, leaning against the driver's-side door. When Back hit her, she was so close to Griess' car that part of her body, as she was propelled by Back's vehicle, knocked the rearview mirror off Griess' car door. At the time she was struck, Krantz could not have been farther from Griess' car than the 6 or 7 inches the mirror protruded from the driver's-side door.

The State's pathologist also testified that as the level of alcohol in the blood rises, the senses of sight, smell, hearing, taste, and touch are affected, as are the brain and central nervous system. He said that at levels of .10 to .20 of 1 gram by weight of alcohol per 100 milliliters of blood, there is a

deterioration in the above-listed functions, which would affect such things as perception, judgment, reaction time, coordination, and sight. Additionally, he testified that as the level of alcohol in the blood increases, the cone of vision narrows, restricting more and more the peripheral field of vision. The facts of this accident, as related above, show circumstantially, at least, a limitation of vision, judgment, reaction time, and perception on Back's part which, based on the testimony of the pathologist, proximately resulted from the consumption of alcohol by Back.

" 'On a claim of insufficiency of evidence, an appellate court will not set aside a guilty verdict . . . where such verdict is supported by relevant evidence. . . .' " *State v. Schumacher,* 240 Neb. 184, 186, 480 N.W.2d 716, 718 (1992). " 'Only where evidence lacks sufficient probative force as a matter of law may an appellate court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt.' " *Id.* There is relevant evidence to establish that at the time of the accident, Back was operating a motor vehicle while under the influence of alcohol. The facts also support a finding by a jury that defendant's condition was a contributing proximate cause of the accident and the death of Krantz. Back's argument that the evidence is insufficient to support his conviction is without merit.

Back's objections to instructions Nos. 4 and 8, insofar as they attack the sufficiency of the evidence to support a theory of "under the influence," have been discussed and shown to be without merit.

However, Back argues that the district court erred in failing to instruct the jury regarding the lesser-included offense of driving while intoxicated. "Where the State offers uncontroverted evidence on an essential element of a crime, mere speculation that the jury will disbelieve the evidence does not entitle the defendant to an instruction on a lesser-included offense." (Syllabus of the court.) *State v. Gonzales,* 219 Neb. 846, 366 N.W.2d 775 (1985). Back implicitly concedes this point of law, but argues that the evidence did not establish the essential element of proximate cause and that therefore he was entitled to a lesser-included offense instruction. We have previously discussed this point.

.

Back contends that "[n]o one knew where the deceased was standing at the time of the accident," brief for appellant at 6, and that, therefore, proximate cause was a controverted issue. Back bases this argument largely on Griess' testimony, on cross-examination, that she did not see Krantz struck by Back's car. This argument is unsupported by the record as a whole. At the time of the accident, Griess was in the driver's seat of her car. Krantz was leaning over, resting her arms on the car door, speaking to Griess directly through the open window. The record is clear that Griess looked directly at Krantz "a couple of seconds" before the accident. Neither Back nor his passenger controverted this evidence—neither saw Krantz struck by their car.

Proximate cause exists in a motor vehicle homicide case if the death was a foreseeable consequence of the illegal conduct underlying the charge. *State v. William*, 231 Neb. 84, 435 N.W.2d 174 (1989). Specifically,

" '[a]n act or omission to act is the proximate cause of death when it substantially and materially contributes, in a natural and continuous sequence, unbroken by an efficient, intervening cause, to the resulting death. . . . In many situations giving rise to criminal liability, the harm that results is unintended, yet is directly or indirectly caused by an act of the defendant. In such cases, where the death or injury caused by the defendant's conduct is a foreseeable and natural result of that conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible.' "

*Id*. at 88, 435 N.W.2d at 177 (quoting *State v. Dixon*, 222 Neb. 787, 387 N.W.2d 682 (1986)). There is nothing in the record but Back's speculation to indicate that his collision with Krantz was not a "foreseeable and natural result" of his driving while intoxicated. There is nothing to indicate that any efficient intervening cause broke the chain of causation. Therefore, Back's protestations aside, proximate cause was an uncontroverted issue, and the district court did not err in refusing a lesser-included offense instruction.

The judgment of the district court is affirmed.

AFFIRMED.

FAHRNBRUCH, J., not participating.