STATE OF NEBRASKA, APPELLEE, V. MARVIN D. EDWARDS, APPELLANT.

507 N.W.2d 506

Filed October 26, 1993.   No. A-92-954.

Richard J. Epstein for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

C<small>ONNOLLY</small>, I<small>RWIN</small>, and W<small>RIGHT</small>, Judges.

W<small>RIGHT</small>, Judge.

Marvin D. Edwards appeals his convictions for unlawful possession with intent to deliver a controlled substance and possession of a firearm by a felon. He assigns as error the district court's overruling his objection to the State's use of two

peremptory challenges in excluding two black potential jurors, and the court's overruling his motion for a new trial based upon ineffective assistance of counsel. He also contends that the evidence is insufficient as a matter of law to support his convictions.

## SCOPE OF REVIEW

A trial court's determination of the adequacy of the State's "neutral explanation" of its peremptory challenges will not be reversed upon appeal unless clearly erroneous. *State v. Morrow*, 237 Neb. 653, 467 N.W.2d 63 (1991).

A motion for new trial on the basis of newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Richter*, 240 Neb. 913, 485 N.W.2d 201 (1992).

## FACTS

The Omaha Police Division obtained a search warrant for a residence located at 4712 North 40th Street in Omaha, Nebraska. The warrant was served by Omaha police in the evening hours of November 20, 1991. Edwards was one of the parties arrested inside the residence during the search, after police officers observed Edwards in the northeast bedroom and ordered him to the ground. As the police rolled him over, they found a loaded semiautomatic pistol described as a Taurus 9 mm. In the right front pocket of Edwards' jacket, police found $805. Items of venue were found indicating that the home was occupied by Damon Ellington and Eugenia Luker. An AT&T bill in Ellington's name included a number of long-distance calls to Edwards in Bakersfield, California.

Outside the house, Officer Mark Lang saw that the basement door was slightly ajar, and he noticed a footprint in an area of fresh dirt. In the backyard, Lang dug about 5 inches into the dirt and found a white plastic bag and an athletic supporter. Inside the athletic supporter were seven plastic baggies of crack cocaine which weighed a total of 11 ounces. A shovel with a small amount of dirt on it was found on the basement stairway.

On the State's motion, Edwards' case was consolidated with those of Ellington, Luker, and Calvin Wright. Ellington and

Luker entered guilty pleas, and Edwards and Wright were subsequently tried together. During voir dire, the State used peremptory challenges to excuse two potential jurors. One potential juror (venireperson No. 1), who lived near 42d and Cuming Streets, stated during voir dire that she worked as an encoder at First Data Resources and that her husband was retired. When asked where her husband had worked before retirement, she replied: "I have no idea. I can't remember offhand. I recently — I was recently married." When questioned about any experiences she had had as a victim of crime, she said: "It has something to do with molestation of a minor." She said that the case had been completed. She did not recall the name of the prosecutor, but said she was not satisfied with the fact that the case took place, but that the outcome had justified the means.

The other potential juror (venireperson No. 2), who lived near 43d and Lake Streets, stated during voir dire that she was unemployed and single and that she had served on a jury about 3 years earlier in a case involving a stolen car. The homes of her brother and mother had been burglarized on two separate occasions, and no one had been arrested. She said that the police had responded and conducted "[s]omewhat" of an investigation, but she did not think the police had done all they could under the circumstances.

After the State exercised its peremptory challenges, the defense requested that the State articulate its reasons for striking the two black potential jurors. Of the three black potential jurors in the pool, the State struck two and the defense struck one. The State said it struck venireperson No. 1 because it was concerned that she did not know the identity of her husband's employer and because she had had contact with the county attorney's office in a sexual assault case and seemed reluctant to discuss the facts of the case. The court suggested that additional inquiries could be made concerning her husband's employment to find out if there was a justification for her being stricken.

The State said it struck venireperson No. 2 because she lived near 43d and Lake Streets, was unemployed and single, had no ties to the community, and was not satisfied with the police

response to her family's burglaries. The court stated that the potential juror's address or her ties to the community were not sufficient reasons to strike her from the panel, but added that her opinion that the police failed to do all they could in regard to the burglaries showed some potential negative feelings about the police and their ability to follow up on crimes and was a substantive position that would justify striking venireperson No. 2. Venireperson No. 1's inability to state her husband's occupation might reflect that she was not alert, adept, and able to assimilate the evidence, and the court found that this was a neutral basis for striking venireperson No. 1 and allowed the potential jurors to be stricken.

At trial, Larissa Minnex testified that the night of the search she saw Edwards go into the backyard of the home for 5 to 10 minutes with his codefendant and that when they returned, Edwards was carrying a shovel. When Minnex, Edwards, and two others went to a liquor store, Edwards said he was worried and wanted to return to the house to check on something in the backyard. Upon their return from the liquor store, Edwards and his codefendant went to the backyard. About 2 minutes later, the police entered the house pursuant to the search warrant.

Luker, who lived in the house with Ellington, pleaded guilty to possession of crack cocaine and testified for the State. She said that Edwards first came to Omaha from Bakersfield, California, in September 1991 and that he stayed in the northeast bedroom of the house. She said that Edwards brought some crack cocaine with him and that at the time he arrived, he had a gun.

Ellington pleaded guilty to a drug-related Class III felony. He testified that he had been involved in selling crack for about $1\frac{1}{2}$ years and that he usually bought about an ounce of crack and then sold it piece by piece for $20 to $100. He said that Edwards was his supplier and that Edwards had brought the handgun in October and left it at Ellington's house.

A chemist testified for the State that the baggies found in the backyard contained crack cocaine which weighed approximately 10 ounces. Swabs of Edwards' hands tested positive for cocaine and marijuana.

Evidence that Edwards had a prior felony conviction was admitted via a copy of the district court judge's journal entry. The prosecutor, without objection from the defense, stated that Edwards had been convicted of possession of a controlled substance and was sentenced to 1 year in prison. During the course of the trial, the codefendant's counsel questioned Edwards about his prior drug conviction.

## ANALYSIS

Edwards argues that in two instances the State discriminatorily excluded blacks from the jury. In *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), the U.S. Supreme Court held that the Equal Protection Clause of the U.S. Constitution forbids a prosecutor from using peremptory challenges to strike individuals from a jury based solely on their race. "Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice." *Batson*, 476 U.S. at 87.

■ To make a prima facie case of purposeful discrimination in the selection of a jury based on the prosecutor's use of peremptory challenges, the defendant must show (1) that he is a member of a cognizable racial group, (2) that the prosecutor has exercised peremptory challenges to remove from the panel members of the defendant's race, and (3) that facts and other circumstances raise an inference that the prosecutor used the challenges to exclude potential jurors based on their race. After the defendant has made a prima facie showing, the burden shifts to the State to provide a neutral explanation for challenging the jurors on the basis of their race. *Id.*

■ In *State v. Rowe*, 228 Neb. 663, 423 N.W.2d 782 (1988), the Nebraska Supreme Court applied the *Batson* test and stated that the prosecutor's explanations do not need to rise to the level of a challenge for cause. If the trial court does not state on the record that the defendant has met the burden of proving a prima facie case, "it does so implicitly by asking the State to articulate its reason for the questioned strikes." *Rowe*, 228 Neb. at 669, 423 N.W.2d at 787. The trial court's determination as to whether a defendant has established purposeful discrimination is a finding of fact "entitled to appropriate deference" from an

appellate court. *Id*. at 670, 423 N.W.2d at 787. The trial court's "determination of the adequacy of the State's 'neutral explanation' of its challenges will not be reversed upon appeal unless clearly erroneous." *State v. Morrow*, 237 Neb. 653, 662, 467 N.W.2d 63, 70 (1991).

We find that the trial court was not clearly wrong in holding that the State's peremptory challenges were used in a nondiscriminatory manner in this case. The fact that venireperson No. 1 was unable to explain where her husband had worked could lead the State to believe, as the court noted, that she was not alert, adept, and able to assimilate the evidence. Venireperson No. 2 expressed her dissatisfaction with the police following burglaries of her relatives' homes, which is a sufficiently neutral reason to challenge her placement on the jury. We find that Edwards' first assignment of error has no merit.

Edwards next argues that the trial court erred in overruling his motion for new trial on the basis of ineffective assistance of counsel. The jury's verdicts were returned on June 9, 1992, and Edwards' motion for new trial was not filed until September 21. The motion for new trial was overruled, and Edwards was sentenced on September 23. A motion for new trial must be filed within 10 days after the verdict unless the motion is based on newly discovered evidence. Neb. Rev. Stat. § 29-2103 (Reissue 1989). Although Edwards contends that a new trial should be granted because of newly discovered evidence, he does not state the substance of any newly discovered evidence. Instead, Edwards provides a number of other reasons as to why he believes a new trial should be allowed, including that the witnesses were allowed to testify to hearsay and to other matters without proper foundation and that exhibits were introduced which were without foundation and were hearsay.

A motion for new trial on the basis of newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Richter*, 240 Neb. 913, 485 N.W.2d 201 (1992).

Section 29-2103 provides:

In any criminal case where it shall be made to appear upon the motion of the defendant for a new trial, supported by

> affidavits, depositions, or oral testimony, that the defendant has discovered new evidence material to his defense which he could not with reasonable diligence have discovered and produced during the term within which the verdict upon which he was sentenced was rendered, the district court may set aside such sentence and grant a new trial . . . .

Edwards' affidavit states that he had only two conferences with trial counsel prior to the hearing on the motion to suppress and that Edwards' trial counsel never discussed with him the preparation of the case or the issues prior to trial. The first time counsel told Edwards that he would have to testify was either the day before or the day of his testimony. During the trial, counsel did not object when the codefendant's counsel questioned Edwards about a prior drug conviction. Edwards states that his trial counsel refused to draft a motion requesting another attorney and that he could not raise these issues until a new attorney had been appointed after trial.

■ The newly discovered evidence offered in support of a motion for new trial must be such that, by strengthening the evidence already offered, a new trial would probably result in a different verdict. *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991). Here, Edwards offers no newly discovered evidence, but, instead, offers his contention that his trial counsel did not adequately represent him, failed to prepare his testimony, and failed to offer appropriate objections during trial. We agree with Edwards' contention that he was not able to raise these issues until a new attorney had been appointed after trial and that since his new counsel was appointed on July 6, his motion for new trial could not have been filed within 10 days of the verdicts. However, we find that the court did not abuse its discretion in refusing to grant Edwards a new trial based on the affidavits and evidence submitted on Edwards' motion.

■ Although it is not precisely stated in the assignments of error, we consider Edwards' contention that he was denied effective assistance of counsel at trial. To sustain a claim of ineffective assistance of counsel, a defendant must show, first, that counsel's performance was deficient and, second, that such deficient performance prejudiced the defense such that there is

a reasonable probability that but for counsel's deficient performance the result would have been different. See *State v. Reichert*, 242 Neb. 33, 492 N.W.2d 874 (1992).

Edwards argues that his counsel should have objected when the codefendant's counsel asked Edwards about a previous drug conviction. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. *State v. Farrell*, 242 Neb. 877, 497 N.W.2d 17 (1993). In response to a question asked by his codefendant's counsel, Edwards admitted that he had been convicted of possession of a controlled substance, crack cocaine, and that he had pleaded guilty because he was offered a deal. Without objection from Edwards' counsel, Edwards testified that he had a failure to appear charge pending against him and that drugs had been planted on him by police when he went to the police station for an identification check. Our consideration in this case is not whether the court should have excluded the testimony, since Edwards' attorney did not object, but whether Edwards has demonstrated with a reasonable probability that if the jury had not been informed that Edwards had previously been convicted of possession of a controlled substance, Edwards would not have been convicted of possession of crack cocaine with intent to deliver.

Objections to testimony about a prior conviction for a similar offense are usually raised in the context of the failure of the trial court to sustain an objection to questions by the prosecutor concerning previous criminal activity of the defendant. In *State v. Johnson*, 226 Neb. 618, 413 N.W.2d 897 (1987), the defendant was convicted of the felony of issuing an insufficient-fund check. The defendant claimed the court erred in not declaring a mistrial based on misconduct by the prosecuting attorney. During the trial, the prosecutor asked the defendant whether he had ever sold unregistered securities and whether he was in prison in the months of January to June 1985. A motion for mistrial on the grounds that the prosecutor had deliberately sought to inflame the jury with this line of questioning was denied, but the court instructed the jury that the question was improper and should be disregarded. The

Supreme Court found that it was apparent that the prosecutor was trying to communicate to the jury that the defendant had been in prison for selling unregistered securities, a similar offense to writing an insufficient-fund check. The court found that the prosecutor's method was wholly improper and reversed the conviction. The court noted that since the credibility of the witness was the critical issue, the determination of whether the defendant could have received a fair trial was questionable.

■ Under Neb. Rev. Stat. § 27-609 (Reissue 1989), once a prior conviction has been established, the inquiry must end, and it is improper to inquire into the nature of the crime, the details of the offense, or the time spent in prison as a result thereof. See *State v. Daugherty*, 215 Neb. 45, 337 N.W.2d 128 (1983). In *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989), the court found that the prosecutor's impeachment of the defendant by questions concerning the number of times he had been convicted of felonious escape was improper and that such error was not harmless.

Although not assigned as error, we point out that the prosecutor in this case offered the transcript of Edwards' prior conviction, including the type of crime and the sentence, without objection by Edwards' counsel. In addition, the prosecutor told the jury via a statement to the court that the exhibit was a certified copy regarding a previous felony conviction where Edwards was "convicted of possession of a controlled substance and sentenced to one year at hard labor at the Nebraska penal complex" in 1991. The exhibit should not have contained a description of the crime or the sentence, and the prosecutor's comment about the contents of the exhibit was improper. See § 27-609.

■ The issue in this case is whether counsel's failure to object when codefendant's counsel asked Edwards about his previous felony conviction and counsel's failure to object to the improper offering of the certified copy regarding Edwards' prior conviction sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution. In *State v. Hawthorne*, 230 Neb. 343, 431 N.W.2d 630 (1988), the defendant based his ineffective assistance of counsel claim on the fact that his retained lawyer

elicited testimony from the defendant during direct examination that the defendant had been convicted of a felony more than 10 years before the trial for first degree sexual assault. The court stated, " '[T]here is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.' " *Id.* at 344, 431 N.W.2d at 631. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

The *Hawthorne* court, applying the *Strickland* test, found that the conduct of Hawthorne's counsel "in eliciting from Hawthorne testimony concerning the prior felony (burglary) conviction, which was otherwise inadmissible as evidence, was performance which fell below a standard of reasonableness required in the defense of a criminal charge, namely, conversance with the rules of evidence." *Hawthorne*, 230 Neb. at 353, 431 N.W.2d at 636. Applying the same reasoning used in *Hawthorne*, we find that under the circumstances of this case, the conduct of Edwards' counsel in failing to object to codefendant's counsel's inquiry regarding Edwards' prior drug conviction and in failing to object to the State's introduction of evidence concerning the details of the prior conviction fell below the standard of reasonableness required of Edwards' counsel.

We next determine whether Edwards has demonstrated with reasonable probability that but for the information about his prior drug conviction, the jury would have acquitted Edwards on the charge of possession of cocaine with intent to deliver. Edwards denied possession of the cocaine. The evidence showed that Edwards was seen going to the backyard that night, was seen returning with a shovel, had expressed concern about the backyard, and had gone to check the backyard. During the search, crack cocaine was found buried in the backyard. Two witnesses for the State testified that Edwards brought crack cocaine with him from California and sold it in

Omaha.

Under the *Strickland* test, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694. We find that the failure of Edwards' counsel to object to this evidence undermines our confidence in the outcome as to Edwards' conviction for possession of cocaine with intent to deliver. The jury, in attempting to determine which of the defendants were in possession of the crack cocaine, could in our opinion rely heavily upon the fact that Edwards had previously been convicted of possession of a controlled substance. We therefore reverse Edwards' conviction for possession of crack cocaine with intent to deliver and remand the matter for a new trial on that issue.

Our inquiry does not end here because Edwards was also convicted of being a felon in possession of a firearm. We review the evidence to determine whether counsel's performance also prejudiced Edwards' conviction involving the firearm. The evidence established that at the time the search warrant was executed, Edwards was residing in the northeast bedroom of the residence. During the search, Edwards was lying on top of a gym bag in the northeast bedroom, and as the police rolled him over, they found a loaded, semiautomatic Taurus 9-mm pistol. The gun was in proper working order and ready to fire. Ellington and Luker testified that Edwards had brought a pistol from California and that he kept it at the residence. As we review the evidence, we cannot say that but for the admission of the prior drug-related conviction Edwards would not have been convicted for possession of the firearm. Even if Edwards' credibility were at issue, the fact that Edwards was lying on top of the pistol is uncontroverted. We cannot say that counsel's performance prejudiced Edwards' defense on this charge such that there is a reasonable probability the result would have been different. The prosecutor could have properly introduced evidence that Edwards had a prior felony conviction in 1991. We therefore affirm Edwards' conviction for possession of a firearm by a felon.

Direct evidence was presented to show that Edwards was a felon in possession of a firearm. We will not interfere with a guilty verdict based upon the evidence unless the evidence is so

lacking in probative force that it can be said that as a matter of law the evidence is insufficient to support the verdict beyond a reasonable doubt. *State v. Connely*, 243 Neb. 319, 499 N.W.2d 65 (1993). The conviction for possession of a firearm by a felon is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR A NEW TRIAL.